HUGGINS, et al. *v.* STATE.

Division B. Oct. 2, 1950.

No. 37552 (47 So. (2d) 852)

Henry & Barbour, and **Herman B. DeCell**, for appellants.

**Joe T. Patterson**, Assistant Attorney General, for appellee.

**Alexander, J.**

Barney and Lamar Huggins, brothers, appeal from a judgment of conviction for grand larceny of two head of cattle. The fact of a theft and the early discovery and identification of the cattle in the possession of appellants is without dispute. The errors assigned may be grouped about three points, which we shall discuss in order.

The first assignment is directed to the refusal of the court to grant a mistrial on account of alleged prejudicial remarks of the prosecuting attorney. The text of these remarks is not of record and must be spelled out of the objections made by counsel and the ruling of the trial judge, which latter is in the following language:

"The Court called case No. 795, and the District Attorney stated, just as Mr. Barbour has related, the theft of some cattle belonging to Jimmie Davis was involved, then Mr. Barbour stated to the Court that that was not the case the District Attorney had announced he was going to try today, and then the District Attorney says, 'We will try the other case.' The motion is overruled.''

The "other case" referred to is the case now on appeal. The motion to which the court's ruling responded alleged that the district attorney stated to an empanelled jury that he was calling for trial an indictment involving the theft of cattle belonging to one Jimmie Davis, but later stated that the announcement of the prosecutor was made before the selection of a jury had begun, but in the hearing of the prospective jurors. The latter version is probably the more accurate since a jury would hardly be empanelled and placed in the box before the case for trial had been agreed upon and the parties had announced ready. The disclosure of a second prosecution was therefore provoked by the statement and objection of the defendant.

During the trial of every case, it is inevitable that there be incidents, more or less trivial, which operate to the advantage of one party or the other. Here, the announcement made was not a calculated maneuver and finds parallel in the routine sounding of a criminal docket which may disclose the identity of the several defendants, some of whose names may appear more than once. It would not do to hold that this typical incident of criminal trial procedure could create a prejudice which would override the oath of the jurors and their sworn voir dire examination.

█ █ It is next assigned for error that the State improperly introduced evidence of a separate offense. A witness, Davis, was on the stand. He had accompanied the sheriff on a patrolling expedition to investigate the theft of cattle. After overtaking appellants at night in a truck with the cattle here involved, the sheriff inquired

whether they had a bill of sale covering the animals. In reply to a question whether the sheriff had made such inquiry, the witness replied: "He asked them about a bill of sale of other cattle." The examination had theretofore covered only the existence of a bill of sale to the cattle here involved. The answer of the witness was not responsive and upon objection the court ruled it out and admonished the jury to disregard such reference. It is a rare case where the possibility of injury is not averted by such admonition. See Shaw v. State, 188 Miss. 549, 195 So. 581. Moreover, the cross-examination for the defendants disclosed the facts of other similar thefts in the same neighborhood, including the theft of cattle belonging to the witness, and the failure of appellants to exhibit a bill of sale. We do not find any reversible error here.

 The other assignments cluster about the contention that the incriminating evidence was procured through an illegal search and seizure. The relevant facts are that the sheriff and the witness Davis had taken to the highway prospecting for information relative to recent thefts of cattle. About 2 o'clock in the morning they spied, upon the highway ahead, a truck, and at a distance estimated as great as a quarter of a mile, the presence of a cow therein was clearly visible. The sheriff speeded up his car and overtook the truck, and by blowing his siren and crowding the truck, it came to a stop. The appellants were recognized and identified. There was no search of the truck except such as was available to open vision. Appellants were then asked if they had a bill of sale to the cattle and replied in the negative. When requested to state where and of whom they had bought them, they replied vaguely, referring to the seller as "Wilson" or "Henderson."

Whereupon, the sheriff left appellant Barney Huggins in charge of the truck with a request to bring it into Rolling Fork. Appellants were not then arrested, though they were subject to the supervision accorded to the sheriff by Code 1942. Section 2025, which requires any one hauling

cattle to have a bill of sale therefor and authorizes the sheriff to make inspection.

When appellants proved unable to identify the alleged seller or give satisfactory explanation for hauling cattle in fact stolen, and in the middle of the night, the sheriff then took them into custody.

We find no evidences of an unlawful search. Even as a roving eye may commit no trespass, so must we refrain from identifying a mere prodding by inquiry into an unlawful search. Nor is the matter of a confession involved. There was no admission of guilt but rather an attempt at denial. Every person who flounders in a cloud of suspicion and interprets an occasion as one demanding explanation, must assume the risk that a hurried improvisation may enmesh him with its own inconsistencies.

We find beside the point the contention that the arrest was unlawful. There was no evidence adduced which sprouts from the fact of arrest. If we put aside consideration of the testimony of the sheriff that he made no arrest until after the initial suspicions had been reinforced by circumstances and statements to the degree of probable cause, we are faced with the truth that the statements of the defendants were not coerced by, but were merely coincident with the arrest. Wherefore, even had the arrest been unlawful, the voluntary statements of the accused would not be thereby excluded. Quan v. State, 185 Miss. 513, 521, 188 So. 568; Brinegar v. U. S., 10 Cir., 165 F. (2d) 512. Moreover, they are not involuntary merely by reason of having been made under arrest, lawful or otherwise.

The record presents a case for the jury and we find no reason to displace the finding.

Affirmed.