HUDDLESTON *v.* STATE.

Feb. 8, 1954

No. 39008          52 Adv. S. 10          70 So. 2d 14

*Colin L. Stockdale,* Jackson, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appel-lee.

ETHRIDGE, J.

Appellant, William Huddleston, was convicted in the Circuit Court of Pike County of burglary. The conviction is amply supported by the evidence, and in fact there is no contradiction of the State's case. The State used ten witnesses, among whom was Thrash, an accomplice of appellant. His testimony contained a credi-

ble narrative of the crime, connected appellant with it, and was corroborated by physical facts and other testimony. Appellant introduced no witnesses.

Appellant argues only one point. The State showed that appellant, along with several other men, entered and stole from the Stewart Motor Company, owned by E. E. Stewart, money and property of the approximate value of $6,918.10. The crime occurred in the nighttime, and among the items of property taken was a 1952 Chevrolet automobile. The next morning the officers found this abandoned car a short distance from the Town of Magnolia, and near it a small bag containing clothing, among which was a pair of trousers bearing the name ''Huddleston.''

The State introduced as a witness Sam Ivy, identification officer with the Mississippi Highway Patrol. He testified that he got the report of the burglary the next morning, and that he went down to Magnolia to investigate it. The district attorney then asked him to go ahead and tell just what he did and what he saw after he got there. Ivy then proceeded to narrate that he processed the car and the motor company for fingerprints; that they found the stolen tires under a bridge and ''when we got back we got information that Deputy Carr had a bag at the scene of the Chevrolet car. Deputy Carr had it in his automobile and me and Inspector Barrett opened the bag and the first pair of pants I picked up had Huddleston in the lining, and we had known Huddleston had gotten out of the Pen.'' Appellant's attorney immediately objected to the last quoted statement. The court sustained the objection and directed the jury to disregard it. Appellant then moved for a mistrial. That motion was overruled. The court asked each of the jurors individually ''Can you and do you disregard that statement that was made?'', to which each juror replied in the affirmative.

Appellant says that the refusal to grant a mistrial was reversible error, since the minds of the jurors had

been prejudiced by the quoted remark of Ivy with reference to the penitentiary, and that this reacted adversely against the defendant. Of course this statement by the officer should not have been made, and the objection to it was properly sustained. However, the court promptly sustained the objection, directed the jurors to disregard it, and then was advised by each of them that they would disregard it. No further reference to that statement of Ivy was made in the trial. In view of the trial court's prompt action on appellant's objection, and because appellant's guilt was rather clearly shown, ██ █ we do not think that this unguarded and unpremeditated statement had such a prejudicial effect as to require a reversal. Somewhat analogous to this situation was that in Huggins v. State, 209 Miss. 552, 47 So. 2d 852 (1950). Moreover, the accomplice's testimony is clear and consistent, is supported by the physical facts and other testimony, and is not contradicted by appellant. And under Rule 11 of this Court, no judgment shall be reversed "unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." For all of the above reasons we affirm the judgment of the trial court.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.